UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
AT LOUISVILLE
CIVIL ACTION NO. 3:07CV346-J

DANTE M. COUNTS                                                                            PLAINTIFF

VS.

MICHAEL J. ASTRUE,
   Commissioner of Social Security                                              DEFENDANT

## MEMORANDUM OPINION

Before the Court is the complaint of Dante Counts ("Plaintiff" or "Claimant") seeking judicial review of the final decision of the Commissioner pursuant to 42 U.S.C. Section 405(g). After examining the administrative record ("Tr."), the arguments of the parties, and the applicable authorities, the Court is of the opinion that the decision of the defendant Commissioner should be reversed.

## PROCEDURAL HISTORY

On October 19, 2005, Claimant filed application for disability insurance benefits and supplemental security income payments, alleging that he became disabled as of February 4, 2004. After a hearing, Administrative Law Judge Patrick B. Kimberlin ("ALJ") determined that Mr. Counts had no exertional limitations, and that his borderline I.Q., psychotic disorder and canabis dependence in remission were severe impairments, but that they did not prevent him from returning to his past relevant work as a janitor/cleaner.  This became the final decision of the Defendant when the Appeals Council denied review on May 9, 2007.

## STANDARD OF REVIEW

The task of this Court on appellate review is to determine whether the administrative

1

proceedings were flawed by any error of law, and to determine whether substantial evidence supports the factual determinations of the ALJ. Elam v. Commissioner, 348 F.3d 124 (6th Cir. 2003). "Substantial evidence" exists if there is sufficient evidence from which reasonable minds could arrive at the challenged conclusion. NLRB v. Columbian Enameling and Stamping Co., 306 U.S. 292 (1939); Foster v. Bowen, 853 F.2d 483 (6th Cir. 1988). If the proceedings are without reversible error and if substantial evidence exists to support the challenged conclusions, this Court must affirm, regardless of whether the undersigned would have found the facts differently.

## ARGUMENTS ON THIS APPEAL

Plaintiff argues that substantial evidence fails to support the ALJ's findings regarding residual mental functional capacity. The specific errors alleged concern the ALJ's failure to accept the opinion of two psychologists, and the ALJ's failure to treat expert Global Assessment of Functioning ("GAF") scores as determinative of disability.

In October of 1995, Dr. Michael Cecil performed a "General Psychological Evaluation." He reported a Full Scale IQ of 68 (mild mental retardation), and a moderate level of depressive symptomatology. He assigned a GAF of 45. Tr. 133. A year later, Dr. J. Robert Noonan assigned a GAF of 48. Tr. 199.

Plaintiff appears to suggest that a GAF of 50 necessarily suggests limitations of a severity greater than are compatible with the residual functional capacity found by the ALJ. According to the American Psychiatric Association's Diagnostic and Statistical Manual of Mental Disorders, Fourth Edition ("DSM-IV"), Axis V's "Global Assessment of Functioning" scale considers "psychological, social, and occupational functioning on a hypothetical continuum of mental health-illness." DSM-IV at 32. The range 41-50 is described as appropriate for "Serious symptoms (e.g.,

2

suicidal ideation, severe obsessional rituals, frequent shoplifting) OR any serious impairment in social, occupational, or school functioning (e.g., no friends, unable to keep a job)." The range of 51-60 is described as appropriate for "Moderate symptoms (e.g., flat affect and circumstantial speech, occasional panic attacks) OR moderate difficulty in social, occupational, or school functioning (e.g., few friends, conflicts with peers or co-workers)."

Even leaving aside for a moment the principle that disability is a legal decision, not a medical decision, it is readily apparent that the GAF, standing alone, is a poor tool for determining ability to engage in substantial gainful employment. One reason is that, "occupational functioning" is but one of three fields considering in assessing the GAF. Another problem with using it as a tool for determining disability is that any system that seeks to compress all psychiatric and psychological considerations into a scale of one to one hundred is necessarily approximate, subjective, and subject to considerable variation in interpretation even among experts who agree with one another about a patient's degree of impairment in any specific area. Finally, it must be noted that a particular GAF range is considered appropriate for several alternative reasons; some of the factors that might result in a low GAF would be largely irrelevant to occupational capacity (for example, suicidal ideation), and it is equally clear that someone with a higher GAF might, in fact, have symptoms that severely interfered with the ability to work (for example, conflicts with co-workers).

The United States Court of Appeals has rejected suggestions that an ALJ commits error by declining to view a GAF score as establishing disability. Pointing out that it had "affirmed denials of disability benefits where applicants had Global Assessment Functioning scores of 50 or lower," the Sixth Circuit recently cautioned that the GAF may have little or no bearing on the claimant's social and occupational functioning. DeBoard v. Commissioner, 211 Fed.Appx. 411, 415 (2006).

Consequently, while the GAF may represent a single piece of information to be considered in a disability inquiry, it cannot substitute for specific information about particular capabilities and characteristics. It necessarily follows that where there is specific information available, vacation of a decision solely on the basis of a GAF number is inappropriate.

Thus, to the extent that plaintiff is arguing that a GAF score below 50 compels a finding of disability, his argument must be rejected. We turn then to the question of whether the psychologists' opinions (including, of course, those factors that went into their GAF decisions) were improperly rejected.

Dr. Cecil's 2005 report did not note any reason to doubt the validity of the test results obtained. He recorded a full scale IQ of 68, placing Mr. Counts in the "mildly mentally retarded" range, but he also found academic difficulties and a dysthymic disorder. While recording a "moderate" level of depression and explicitly noting no anxiety symptomatology, Dr. Cecil's report was ambiguous regarding the existence of "significant" depressive symptomatology. Dr. Cecil's impression was that Mr. Counts exhibited "severely impaired" word reading and numerical operations skills, and he recommended "supported employment" for Mr. Counts. Tr. 130-133.

When Dr. Noonan examined Mr. Counts in October of 2006 at the request of the ALJ, he had the results of the previous year's exam, and he administered the same or similar tests. Dr. Noonan reported a full scale IQ of 49, but he concluded that those psychological testing results were invalid because the claimant's effort was poor. Dr. Noonan explained his belief that this poor effort was due to confusion rather than to malingering. Dr. Noonan stated that Mr. Counts "is continuing to function in the mild range of mental retardation," and "appear[ed] to be confused, clouded, and possibly psychotic during the examination." He observed that Mr. Counts' confusion became more

4

pronounced during the course of the examination, and he exhibited increasing difficulty with the pressures of answering questions. Dr. Noonan concluded, "it is believed that Mr. Counts would be able to understand and follow only the simplest directions that were modeled for him and this would require continued monitoring," and "this examiner questions whether he would be capable of tolerating pressures of day-to-day work." Tr. 192-199.

The ALJ rejected Dr. Noonan's opinion because "there is no reasonable explanation for [the] significant deterioration in IQ levels," and because "the claimant gave little effort" on the tests. This treatment of Dr. Noonan's report reflects a disregard of significant portions of the record. First, it should be noted that Dr. Noonan did *not* base his assessment of functional level on the IQ test he administered. Indeed, he explicitly stated that, contrary to the full scale IQ score of 49 he obtained, he believed Mr. Counts was continuing to function at the level of mild mental retardation. Thus, it is inaccurate to conclude that the limitations described by Dr. Noonan were based on the IQ testing. Indeed, Dr. Noonan explicitly rejected the validity of the 2006 psychological tests. Second, the ALJ appears to have disregarded the fact that Dr. Noonan specifically reported his consideration of whether Mr. Counts' "poor effort" was a result of lack of trying (malingering) or whether it resulted from the confusion produced by Mr. Counts' psychosis. Based on his examination of Mr. Counts and his professional training, Dr. Noonan concluded that the "poor effort" was *not* a matter of malingering, but was a matter over which he had no control because of his mental condition. Tr. 193.

The ALJ identified no rationale whatsoever for rejecting Dr. Noonan's professional opinion regarding Mr. Counts' "poor effort." As Dr. Noonan's opinion was based on his personal observation and interaction with Mr. Counts, it cannot be said that the January 2006 opinion of a

5

non-examining DDS reviewer can constitute substantial evidence to overcome that opinion. The ALJ has identified no basis for disregarding the significant medical evidence, and it cannot be said that substantial evidence exists to support the conclusion of the ALJ.

If the record is fully developed, all essential factual issues have been resolved, and the record adequately establishes entitlement to benefits, remand for further proceedings serves no legitimate purpose. See, e.g., Abbott v. Sullivan, 905 F.2d 918 (6th Cir. 1990). We believe this is one of those rare cases in which "proof of disability is strong and evidence to the contrary is lacking." Faucher v. Secretary, 17 F.3d 171, 176 (6th Cir. 1994). Accordingly, the decision of the Commissioner will be vacated and this matter will be remanded for award of benefits.